Sam E. WILSON, Jr., and wife, Ada Rogers Wilson,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 14908.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1955.

Robert B. Payne, Ralph B. Shank, Shank, Dedman & Payne, Dallas, Tex., of counsel, for petitioners.

Meyer Rothwacks, Special Asst. to Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Daniel A. Taylor, Chief Counsel Int. Rev. Serv., William D. Crampton, Special Atty. Int. Rev. Serv., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

The issue here presented for our consideration is whether the Tax Court erred in holding that the forgiveness by a corporation of a debt owed by a stockholder, owning virtually all of its stock, resulted in the taxpayers' realizing ordinary income, as the Commissioner contends, or is gain from the sale or exchange of a capital asset if, as the taxpayers contend, they had previously entered into a contract for sale of their stock for a price that was based on the value of the corporation's assets. The Tax Court held with the Commissioner's contention that the forgiveness resulted in the taxpayers realizing ordinary income.

The facts are in dispute, and they were not, as to all of them which are essential to a decision of the case, resolved by the Tax Court in its findings of fact.

It is undisputed that on January 31, 1948, taxpayer and his wife, residents of Texas, owned all but a nominal number of the shares of stock of Wil-Tex Oil Corporation; that on that date they were indebted to Wil-Tex in the sum of $33,950.00; that on February 10, 1948, an agreement was made between taxpayers and Panhandle Producing and Refining Company whereby taxpayers became bound to sell and Panhandle to buy all the Wil-Tex stock for $4,000,000, less the "net liabilities" [1] of Wil-Tex at the close of business on February 28, 1948; that the closing date was, by mutual consent, postponed to April 8th and the date of the ascertainment of "net liabilities" was changed to March 31, 1948; that the sale was consummated in accordance with this agreement; that the account receivable of $33,950.00 had been cancelled prior to March 31, 1948.

The important fact issue that was not resolved by the Tax Court was whether the debt was cancelled before February 10th or after that date. Petitioners' principal contention is that after the binding contract to sell had been made, their indebtedness to the company was cancelled, this in effect amounting to a pre-payment by Panhandle of $33,950.00 of the purchase price it would subsequently have to pay, and that even if such cancellation amounted to a dividend such dividend was income to Panhandle, the purchaser, and not to them, since Panhandle, and not they, received the economic benefit of it.[2]

---

1. The contract defined "net liabilities" to mean "the total liabilities of Wil-Tex other than the capital stock and surplus, less the aggregate amount of the current assets of Wil-Tex. * * *"

2. See Moore v. Commissioner of Internal

The Government, on the other hand, says the debt was cancelled on January 31, 1948, before the contract was signed, and that even if cancelled after February 10th, the results flowing therefrom would not be as petitioners contend.

There was a genuine issue of fact as to the date of cancellation. The finding by the Tax Court that "The journal entries canceling the $33,950.00 indebtedness were made *under date of* January 31, 1948," (emphasis supplied) will not be considered as a finding that the entries were made *on* that day in the light of the positive testimony of the taxpayer and his accountant that the account was on the books on February 10th and that they decided to cancel it in light of the contract that had then been signed.

We do not now pass upon the merits of the legal contentions put forward by petitioners. Before we do so the facts should be established by the Tax Court so that our consideration of the legal proposition will not be based on a hypothetical question.

Further, respondent complains that a subsidiary argument put forward by petitioners to the effect that in the admitted condition of Wil-Tex's depletion or depreciation reserve, the cancellation fell within the provisions of Treasury Regulations III, Section 29.115–6, causing it to be "taxed as a gain from the sale or other disposition of property as provided in Section 29.111–1," was not presented or argued below. A remand of the case to the Tax Court will eliminate this issue and permit the Tax Court to give full consideration to petitioners' contention.

The decision of the Tax Court is, therefore, reversed and remanded for action consistent with this opinion.

Revenue, 7 Cir., 124 F.2d 991 and Northern Trust Co. of Chicago v. United States, 7 Cir., 193 F.2d 127.